ON MOTION FOR REHEARING, CLARIFICATION AND CERTIFICATION
THOMAS, J.
We deny Appellant’s motion for rehearing, clarification, and certification, but withdraw our opinion dated July 11, 2013, and substitute the following in its place.
This case involves Appellant’s assertion that he was provided ineffective assistance of collateral counsel. In his claim, Appellant relies on the recent United States Supreme Court decision in Martinez v. Ryan, — U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). To appropriately frame, the issue here and provide necessary context, we provide the following facts and procedural history.

Facts and Procedural History

In- 2008, following a jury trial, Appellant was found guilty of a robbery committed on October 6, 2006, in which he punched the female victim in the face, knocked her to the ground and kicked her, to take her purse in a grocery store parking lot. The victim sustained serious physical injuries and emotional trauma from the robbery, including panic attacks. She testified at a sentencing hearing of the co-defendant that the trauma led her to resign a job she had held for 26 years, as she now was afraid to travel alone.
The evidence at trial established that Appellant and a co-defendant pulled their white van behind the victim’s car, blocking her in, while Appellant, the passenger in the van, asked the victim for directions. Appellant was wearing a hat with a college logo and holding a map. As the victim was attempting to give him directions, Appellant lunged at the victim, punched her in the face, knocking her to the ground, while he attempted to take her purse. Appellant dragged the victim for some distance and pulled her hair from her scalp in his attempt to force the victim to release her purse. The victim finally released her purse, and Appellant ran over to the driver’s door, hanging on to the door window, while the van drove away.
The victim memorized the van’s tag number. In addition, during the robbery, Appellant dropped the map and his hat with the college logo. Appellant’s DNA was later identified on this hat.
A witness who was attempting to park during the robbery pulled up behind the white van. The witness saw two men in the van, and when it moved, the witness drove to another area. When the witness got out of her car, she heard a woman screaming from the area of the white van. The witness ran toward the sound and saw a man attacking the victim. As the van pulled away, the victim screamed out the van’s tag number. The witness went to the store for help and assisted the victim. After the robbery, this witness identified the driver of thé white van, but not the passenger.
The victim sustained injuries, including a cut knee, broken bone, swollen lip, and hair torn away from her head.
Appellant was arrested on the night of the robbery oh unrelated charges. The *431 arresting officer put Appellant in the back seat of his police car, which had never held an arrestee before, having been assigned to the officer only two days earlier. The officer testified he checked the back seat before placing Appellant there; he checked the back seat again after Appellant was taken from the car, and discovered the victim’s credit cards, gift certificates and other papers tucked under the floorboard of the seat.
An investigating detective testified that the victim’s purse was found at an apartment where Appellant and his co-defendant were visiting and where the co-defendant was arrested. Several of the victim’s belongings were found in the co-defendant’s wallet and also in the possession of the apartment’s resident.
At trial, identification was the only disputed issue. The victim identified Appellant, although at her first identification to police she was not “100 per cent” sure, but was “75 per cent” sure. As noted, the jury convicted Appellant of robbery. This court affirmed his conviction and sentence on direct appeal. Netting v. State, 4 So.3d 1227 (Fla. 1st DCA 2009) (table opinion).
In 2010, Appellant filed his first post-conviction motion pursuant to Florida Rule of Criminal Procedure 8.850. Appellant, through appointed posteonviction counsel, presented “18 arguments in support of finding [appointed] trial counsel ... ineffective.” These arguments essentially claimed that trial counsel was ineffective in establishing Appellant’s “actual innocence” in numerous ways: trial counsel failed to call alibi witnesses; failed to preserve arguments regarding the victim’s inaccurate description to a police officer; failed to suppress the victim’s pre-trial identifications of Appellant; failed to suppress evidence of the victim’s credit cards that Appellant left in the patrol car after his arrest on unrelated charges; failed to object to the State’s “prevarications” during opening argument and trial; failed to elicit prior inconsistent statements of the victim and the other witness who identified Appellant’s co-defendant; and other related failings.
After the evidentiary hearing, the trial court denied the motion for postconviction relief. Appellant’s postconviction counsel appealed this denial, raising 13 issues on appeal. On September 10, 2012, this court affirmed the trial court’s denial of postcon-viction relief, and the mandate issued on September 27, 2012. Netting v. State, 2012 WL 3930424 (Fla. 1st DCA Sept.10, 2012).
Less than three months later, on December 5, 2012, Appellant filed his second rule 3.850 motion in the trial court, and an amended motion, raising 13 claims of ineffective assistance of postconviction counsel, premised upon the United States Supreme Court’s opinion in Martinez v. Ryan, — U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). On February 28, 2013, the lower court summarily denied the motion. This appeal follows.
In addition, on August 23, 2013, this court denied Appellant’s petition for ineffective assistance of appellate counsel. Netting v. State, 119 So.3d 558 (Fla. 1st DCA 2013).
The issues surrounding Appellant’s conviction have thus been litigated for seven years, involving seven judicial proceedings in state courts, including 1) a jury trial; 2) a direct appeal from that jury trial; 3) a postconviction motion in the trial court challenging the effectiveness of appointed trial counsel; 4) a direct appeal of the denial of that postconviction motion in this court; 5) a second motion for post-conviction relief in the trial court, challenging the effectiveness of Appellant’s appointed postconviction attorney, based on *432 Martinez; 6) a petition alleging ineffective assistance of appellate counsel; and now, 7) a direct appeal of the denial of that second postconviction motion claiming ineffective assistance of postconviction counsel based on Martinez.

Analysis

These collateral proceedings impose a burden on the state’s judiciary and its limited public resources and, of course, affect the ability of other litigants with legitimate disputes from obtaining prompt judicial resolutions of them claims. Successive collateral claims may be summarily denied in most instances under Florida Rule of Criminal Procedure 3.850(h)(2): “A second or successive motion is an extraordinary pleading. Accordingly, a court may dismiss a second or successive motion if the court finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the defendant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure....” But, as here, even though such claims may be summarily denied, the consideration and denial of those claims requires the judiciary to expend time and resources to act on successive motions.
We write to note that Appellant’s current claim had legal merit under Martinez, he would be entitled to yet another legal proceeding in the trial court to challenge the effectiveness of his first postconviction counsel. Should that proceeding prove unsuccessful, Appellant would no doubt seek review of that postconviction proceeding in this court. Thus, under Appellant’s argument, he would be entitled to a total of nine judicial proceedings in state court, including his original jury trial.
Because we find Appellant’s current claim fails as a matter of law, however, we affirm the trial court’s summary denial of relief, as there is no entitlement to the effective assistance of postconviction counsel. Ineffective assistance of postcon-viction counsel is not a cognizable claim in Florida, because there is no constitutional entitlement to the appointment of postcon-viction counsel, as held in Kokal v. State, 901 So.2d 766, 778 (Fla.2005): “Because a defendant does not have a constitutional right to counsel during postconviction proceedings, he clearly does not have a claim for ineffective postconviction representation.” The United States Supreme Court’s decision in Martinez does not change this conclusion, but it does merit further discussion.
The United States Supreme Court has long held that there is no constitutional entitlement to counsel in postconviction proceedings. See Murray v. Giarratano, 492 U.S. 1, 7-8, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (citing Johnson v. Avery, 393 U.S. 483, 488, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). This principle is also controlling in Florida law, which provides that “there is no absolute right to counsel in post-conviction relief proceedings” and sets forth criteria to guide a postconviction court’s discretion in considering whether the appointment of counsel may become necessary when a colorable claim is presented. Graham v. State, 372 So.2d 1363, 1365-66 (Fla.1979).
The United States Supreme Court did not reverse this settled precedent in Martinez. In fact, by its own express and repeated assertions in the analysis of Martinez, the Court declined to address the asserted constitutional right to effective assistance of postconviction counsel, as it was not necessary to a determination of *433 that case. From the outset of that opinion, the Court stated that “[w]hile petitioner frames the question in this case as a constitutional one [concerning his right to an effective attorney in his collateral proceeding], a more narrow, but still disposi-tive, formulation is whether a federal habe-as court may excuse a procedural default of an ineffective assistance claim when the claim was not properly presented in state court due to an attorney’s errors in an initial-review proceeding.” Martinez, 132 S.Ct. at 1313.
In Martinez, the defendant had been barred from raising claims of ineffective assistance of counsel in a federal habeas proceeding due to the procedural default rule, which prevents a federal court from considering the merits of claims that were barred in state court based upon a well-established procedural rule. 132 S.Ct. at 1314. To circumvent this bar, the defendant in Martinez argued that his attorney in his initial collateral review proceedings provided ineffective assistance in failing to raise trial counsel’s ineffectiveness. Id. He argued that this failure established cause to except him from the application of the procedural default rule and permit him to pursue federal habeas relief. Id.
Although the defendant in Martinez framed the issue in terms of whether there was a constitutional right to effective assistance of counsel in collateral proceedings, the Supreme Court narrowed the issue to the following: whether counsel’s failures in an initial-review collateral proceeding, which provided a defendant’s first opportunity to raise claims of ineffective assistance of trial counsel, could provide an excuse to a procedural bar, and thus allow ineffective assistance of trial counsel claims to be raised in federal court. Id. at 1313. The Supreme Court thus disavowed any intention of creating a right to assistance of counsel in collateral proceedings. Id. at 1319. Consistent with this reasoning, the Court ultimately concluded that ineffective assistance of collateral counsel could serve as cause to permit a defendant to pursue collateral claims in a federal habeas proceeding, despite being otherwise barred by the procedural default rule. 132 S.Ct. at 1320.
In light of the narrow holding in Martinez, the Florida Supreme Court has held that Martinez did not create a constitutional claim of ineffective assistance of postconviction counsel. Gore v. State, 91 So.3d 769, 778 (Fla.2012). The court observed that the U.S. Supreme Court had declined to address the existence of a constitutional right to postconviction counsel, concluding that “Martinez is directed towards federal habeas proceedings and is designed and intended to address issues that arise in that context.” Id. Further, the Florida Supreme Court has twice reaffirmed this analysis with reference to the reasoning in Gore. See Howell v. State, 109 So.3d 763, 774 (Fla.2013); Mann v. State, 112 So.3d 1158, 1164 (Fla.2013).
Given this authority, Florida law does not recognize a right to the effective assistance of postconviction counsel, and there is no binding federal precedent to the contrary. Therefore, Appellant’s claims were properly denied as a matter of law, and the trial court’s decision is affirmed.
AFFIRMED.
ROWE and SWANSON, JJ., concur.